UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07-cv-350

| | |
|---|---|
| NATIONAL WELDERS SUPPLY COMPANY, INC., </br> Plaintiff, </br></br> v. </br></br> ROBERTS OXYGEN COMPANY, INC., and E. CARL ROBERTS, </br> Defendants. | ORDER |

## I. INTRODUCTION

**THIS MATTER** is before the Court on the defendants' Objections (Doc. No. 19) to the magistrate's Memorandum and Recommendation (Doc. No. 18), recommending that the defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Doc. No. 7), be denied. After its *de novo* review of the defendants' Motion, the Court **GRANTS IN PART** and **DENIES IN PART** the defendants' Motion (Doc. No. 7), and **DENIES** the defendants' Motion for Summary Judgment (Doc. No. 7) as **MOOT**. The Court adopts the magistrate's factual background, and incorporates it herein.

## II. MOTION TO DISMISS

A. **Standard of Review**

Recently, the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), revised the Rule 12(b)(6) standard in the context of antitrust litigation and disavowed the "no set of facts" language found in <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957). In its place, the Supreme Court has created the plausibility standard which requires a plaintiff to set forth the "grounds" for an

1

"entitle[ment] to relief" that is "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal quotation marks omitted). It is under this standard that the Court will evaluate the motion.

Rule 8(a)(2) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court will regard all the factual allegations of the complaint as true and construe all the factual inferences in the plaintiff's favor. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 218 (4th Cir.1994). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

**B. Tortious Interference (Counts I-III)**

The plaintiff alleges tortious interference with customer contracts in Count I, with employee contracts in Count II, and with prospective economic advantage in Count III. The essential elements of a tortious interference with contract claim are: (1) that a valid contract existed between the plaintiff and a third party; (2) that the defendant had knowledge of the plaintiff's contract with the third person; (3) that the defendant intentionally induced the third person not to perform his contract with the plaintiff; (4) that the defendants acted without justification; and (5) that the interference caused the plaintiff actual damages. Peoples Sec. Life Ins. Co. v. Hooks, 367 S.E.2d 647, 649-50 (N.C. 1988). The only difference in these elements for a tortious interference with prospective economic advantage claim is that instead of an existing contract, there must be a contract that would

have been entered into but for the defendant's conduct. Beck v. City of Durham, 573 S.E.2d 183, 191 (N.C. Ct. App. 2002).

The defendant argues that the "Plaintiff's complaint fails to identify a single specific contract or contractual expectation that Defendants in fact tortiously interfered with." (Doc. No. 19: Def. Obj. at 3). The Court disagrees. In regards to customer contracts (Count I), the Complaint sufficiently identifies valid contracts by name and by operation. The contracts in question are called "product supply agreements" that obligate certain customers "to purchase their present and future requirements of certain supplies, gases and related equipment" from the plaintiff. (Doc. No. 1: Complaint at ¶ 45). In regards to employee contracts (Count II), the Complaint sufficiently identifies fourteen employees by name, position, and branch that the defendants allegedly solicited and hired away, (Id. at ¶ 19-23), and sufficiently alleges that these employees were bound by employee agreements containing restrictive covenants, (Id. at ¶ 53). In regards to prospective economic advantage (Count III), the Complaint is sufficient because it alleges that "Defendants have induced *existing* and prospective customers not to enter into contracts with National Welders." (Id.¶ 59) (emphasis added). While the complaint fails to specify in what manner the plaintiff had a prospective relationship with the existing customers, it is plausible that the plaintiff had a prospective economic advantage to gain from their existing customers but for the defendants' interference.

The defendants also argue in their Objections that the Complaint fails to sufficiently allege that the defendants acted "without justification," which is a required element of the tortious interference claims. (Def. Obj. at 4). The magistrate correctly noted that fair competition can be a defense to a tortious interference claim, but that such a defense would not prevail if the defendants

employed "fraud, misrepresentation, intimidation, coercion, obstruction, or molestation" to interfere with the plaintiff's contracts with employees and/or customers, Hooks, 367 S.E.2d at 651 (internal quotation marks omitted), often referred to as "anticompetitive" conduct, Cameron v. New Hanover Mem'l Hosp. Inc., 293 S.E.2d 901, 917 (N.C. Ct. App. 1982). The Complaint, however, states that the defendants induced customers "to breach or repudiate their product supply agreements," (Complaint at ¶ 50), that they induced employees "to breach their employee agreements," (Id. at ¶ 55), and that defendants intentionally engaged in secretive and damaging behavior to disrupt its operations. Such allegations denote something more than fair competition, and thus sufficiently alleges that the interference was "without justification."

Therefore, the Court denies the Motion to Dismiss in regards to Count I, Count II, and Count III.

## C. Misappropriation of Trade Secrets (Counts IV-V)

The Court accepts the magistrate's analysis and conclusion as its own for Counts IV and V. Accordingly, the defendants' Motion to Dismiss is denied as to Counts IV and V.

## D. Unfair or Deceptive Trade Practices (Counts VI)

"To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." First Atl. Mgmt., Corp. v. Dunlea Realty, Co., 507 S.E.2d 56, 63 (N.C. Ct. App. 1998). The determination of whether an act or practice is an unfair or deceptive practice is a question of law for the court. Ellis v. Northern Star Co., 388 S.E.2d 127, 131 (N.C. 1990). A practice is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Marshall

v. Miller, 276 S.E.2d 397, 403 (N.C. 1981). A practice is deceptive "if it has the capacity or tendency to deceive; proof of actual deception is not required." Id.

The defendants argue that the plaintiff has not alleged facts sufficient to support this claim because an employee's decision to leave one employer and work with another is not unfair or deceptive. The Complaint, however, sufficiently alleges that the defendants' actions were unfair and deceptive, including but not limited to inducing employees to breach existing employment agreements, inducing existing customers to breach their existing product supply agreements, and that the former employees misappropriated trade secrets by taking confidential information without permission. Taken in a light most favorable to the plaintiff, these allegations should be construed as "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Id.

Therefore, the Court denies the defendants' Motion to Dismiss as to Count VI.

**E. Civil Conspiracy (VII)**

The defendants argue that the civil conspiracy and vicarious liability claims must be dismissed because they cannot survive after dismissal of the other claims alleging wrongful acts. See Shope v. Boyer, 150 S.E.2d 771, 773-74 (N.C. 1966) (noting that claim of civil conspiracy must accompany "alleged wrongful overt acts"); Draughon v. Harnett County Bd. of Educ., 602 S.E.2d 721, 726 (N.C. Ct. App. 2004) (noting that no vicarious liability can be found against the principal where the agent has not committed a wrongful act). However, this argument must fail because the claims alleging the wrongful acts should not be dismissed.

The defendants also argue, even if the claims alleging wrongful acts are not dismissed, that the civil conspiracy claim should be dismissed because of the intracorporate conspiracy doctrine. In return, the plaintiff argues that discovery is necessary to determine whether Carl Roberts was an

"agent" or whether he was an independent actor who could conspire with Roberts Oxygen. Furthermore, the plaintiff argues that discovery is necessary to determine whether any exceptions to the intracorporate conspiracy doctrine apply. (Doc. No. 13: Pl. Response at 12).

The intracorporate conspiracy doctrine can be traced back to Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911 (5th Cir. 1952), cert. denied, 345 U.S. 925 (1953), an anti-trust action based on an alleged conspiracy between a corporation and its officers, employees and agents. The Fifth Circuit held:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

Id. at 914. The Fourth Circuit recognized this doctrine in the field of anti-trust in Greenville Publ'g Co. v. Daily Reflector, Inc., 496 F.2d 391, 399 (4th Cir. 1974), but noted "an exception may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective." Id. at 399. The Fourth Circuit also applied the doctrine in the civil rights context in the case of Buschi v. Kirven 775 F.2d 1240 (4th Cir. 1985), but noted another exception saying, "while authorized acts of the [corporate] officials would constitute corporate action, (and hence would avoid a conspiracy charge), unauthorized acts would not." Id. at 1253 (internal quotation marks omitted).

In the instant case, the Complaint is clear on its face that Defendant Roberts Oxygen Company, Inc. is a corporation, (Complaint at ¶ 2), and that Defendant E. Carl Roberts "has and continues to act as an agent of, in concert with and on behalf of Roberts Oxygen," (Id. at ¶ 3); (see also id. at ¶ 76). The plaintiff alleged that Carl Roberts was an agent and provided no alternative allegation. Furthermore, "[n]othing in the language of the Complaint . . . alleges facts sufficient to

6

invoke either of the exceptions to the intracorporate conspiracy doctrine recognized under the law of the Fourth Circuit." Bank Realty, Inc. v. Practical Mgmt. Tech., Inc., 935 F.2d 267, *4 (4th Cir. 1991) (unpublished table decision) (affirming the 12(b)(6) dismissal of §1985 and §1986 claims pursuant to the intracorporate conspiracy doctrine).

The magistrate indicated that discovery would be necessary to know for sure if an agency relationship existed between the defendants. The Court, however, finds that discovery is not needed, as the Complaint is clear on its face. Discovery can not undo the plain meaning of the allegations, which is clearly being brought against a corporation and its agent. Therefore, the Courts grants the defendants' Motion to Dismiss as to Count VIII.

**F. Vicarious Liability (Count VIII)**

The plaintiff has alleged in Counts I through VI that both Defendant Roberts Oxygen, Inc., and Defendant Carl Roberts were both directly liable for their own torts. If both Defendants are directly liability, there is nothing vicarious or derivative about the principal's liability.

However, the Court will allow Count VIII to survive the motion to dismiss for two reasons. First, while the name of Count VIII is "Vicarious Liability," it alleges that Defendant Roberts Oxygen is both vicariously *and* jointly liable. (Complaint at ¶ 80). Thus, it is plausible that the defendants are both directly liable and will be found to be jointly liable. Second, it is also plausible that Defendant Roberts Oxygen will have no direct liability, but still be subject to derivative liability due to the direct liability of its agent, Defendant Carl Roberts.

Therefore, the Court will deny the defendants' Motion to Dismiss as to Count VIII.

### III. THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

The defendants have moved for summary judgment in the alternative to their motion to

dismiss, and have attached two affidavits in support thereof. The defendants thus argue that the motion to dismiss has been converted into a summary judgment, and the nonmoving party (here, the plaintiff) now bears the burden of proof to factually support each claim to avoid summary judgment. (Doc. No. 8 at 4).

Rule 12(d) provides in part, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The plain language, "and not excluded by the court," gives this Court great discretion in deciding whether to accept or exclude the two affidavits submitted by the defendants in support of summary judgment. See Bosiger v. US Airways, Inc., 510 F.3d 442, 450 (4th Cir. 2007) (recognizing a district court's discretionary power to convert a Rule 12(b)(6) motion into a Rule 56 motion). A district court should exercise this discretion only when "all parties [have been] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 56(c). In interpreting the requirements of this rule, the Fourth Circuit has held that a "party must be afforded a reasonable opportunity for discovery before a Rule 12(b)(6) motion may be converted and summary judgment granted." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (internal quotation marks omitted); see also Johnson v. RAC Corp., 491 F.2d 510, 514 (4th Cir. 1974) ("The plaintiff should have been afforded an opportunity . . . to employ discovery, in order to counter, if he could, the facts set forth in the defendant's affidavit or to establish a factual basis for his action against the defendant.").

In the instant case, the plaintiff has not had a reasonable opportunity to conduct discovery. This case has hardly progressed beyond the earliest stages of litigation. The Court has not issued a case management plan, and the parties have not even had an initial attorneys' conference or a filed

a Rule 26(f) report. The plaintiff has filed the affidavit of Jay Campell in response to the defendants' affidavits for the sole purpose detailing the types of discovery needed in this matter.

The Court concludes that both parties should be allowed to conduct discovery in this matter, and in its discretion, does not permit the motion to dismiss to be converted into a motion for summary judgment. The Court, therefore, denies the defendants' motion for summary judgment as moot.[1]

---

[1] The magistrate noted in his M&R that the plaintiff had "actual notice" that the motion to dismiss could be converted to a motion for summary judgment because the defendants had filed affidavits in support thereof. (Doc. No. 18: M&R at 9). The magistrate then proceeded with a summary judgment analysis and recommended that the motion be denied due to the lack of discovery. The Court here takes a different approach, and in its discretion, excludes the affidavits from its analysis. Therefore, the Court does not permit the motion to dismiss to be converted to a motion for summary judgment, and thus denies the latter motion as moot.

## IV. CONCLUSION

After the Court's *de novo* review of the entire record, **IT IS HEREBY ORDERED:**

1) the defendants' Motion to Dismiss (Doc. No. 7) is **GRANTED** as to Count VII;

2) the defendants' Motion to Dismiss (Doc. No. 7) is **DENIED** as to the remaining Counts; and

3) the defendants' Motion for Summary Judgment (Doc. No. 7) is **DENIED** as Moot.

**SO ORDERED.**

Signed: April 22, 2008

Robert J. Conrad, Jr.
Chief United States District Judge